# CIRCUIT COURT U. S.

## RICHMOND, DECEMBER, 1817.

United States
v. } PIRACY.
William Hutchings.

Present—Hon. Ch. J. *Marshall.*

*William Wirt, Esq.*, Counsel for the United States.

Messrs. *Upsher* and *Murdaugh*, Counsel for the prisoner.

The leading facts proved on the part of the prosecution, were the following:

The schooner Romp, armed with six eighteen pound carronades, sailed from Baltimore early in April last, ostensibly on a commercial voyage for Buenos Ayres. She took with her an American register, and was, in all respects, documented as an American vessel. About 12 days after leaving the capes of Virginia, her crew were mustered, when they were informed of the destination of the vessel against the commerce of Spain. A salute was fired; the colours of Buenos Ayres hoisted; the name of the vessel changed from the Romp to the Santafecino, and articles under the government of Buenos Ayres signed by the crew.

There was some disagreement between the witnesses as to the manner in which the crew received the intelligence of this change in the national character of the vessel, some affirming that the colours of Buenos Ayres were saluted with cheers, and affirming that they were saluted with murmurs.

On an indictment for piracy, a commission from a government, whose independence has not been recognized may be given in evidence to the jury merely as a paper found on board the vessel; it cannot be received to justify piratical acts committed under it.

The seal of one government not recognized by the other proves nothing. A nation becomes independent from its declaration as it respects its own government; and independent as to other nations when recognized by them.

To make a robbery upon the high seas piracy, it is not necessary that robbery should be punished by death upon land.

RICHMOND
December.

United States
v.
Hutchins.

The *Santafecino*, however, proceeded on her cruise, and in the course of it, captured five Spanish vessels, out of which they took every thing valuable, sent two of them to Buenos Ayres for condemnation, and gave up the rest to the prisoners. Near an hundred vessels, American, Portuguese, Dutch, English, and others, which were neutral between Buenos Ayres and Spain, were spoken during the cruise ; all of which were treated politely. The general conduct of the *Santafecino*, appeared to be that of a regular commissioned vessel, her prisoners being treated humanely, and their private property restored to them, and perfect respect always paid to the vessels of neutral nations. Some of the witnesses, who were of the crew of the Santafecino, farther proved that the crew were dissatisfied with the colours under which they sailed, and that the revolt among them was in consequence of this dissatisfaction.

The only evidence offered on the part of the prisoner was a paper, purporting to be a commission to the Santafecino, and a commission to the prisoner, as sailing master on board of her, from the government of Buenos Ayres. The district attorney objected to their going to the jury, because,

1st. There was no evidence of their being genuine papers, as there was no proof that Buenos Ayres was an independent government, nor that the seals attached to these commissions was the seal of Buenos Ayres.

2d. If the commissions were genuine papers, they obviously did not belong to this vessel, for they bore date in November, 1815, and the name of Santafecino was not borne by this vessel until the April following.

These points Mr. *Wirt* pressed with his usual eloquence and vigor.

Mr. *Usphur*, for the prisoner, contended, that the pa- <span>RICHMOND<br>Dec. 1817.</span>
pers ought to go to the jury, as evidence to be allowed,
whatever weight they should be entitled to.  He con- United States
tended that the question, whether Buenos Ayres was    v.<br>Hutchings.
independent or not, was for the executive to decide, and
not the judiciary.  That a late correspondence between
Don Onis, the Spanish minister, and the American sec-
retary of state, proved that the people of Buenos Ayres
were in a state of revolutiou, exerting themselves to
throw off the yoke of Spain.  That there was an exact
and perfect analogy between that contest and the revo-
lutionary contest of our country.  That by the treaty of
1783, by numerous decisions of our courts, recognizing
the validity of laws passed during the revolution, and
by express decisions on the point, the principle was set-
tled that our existence as an independent nation com-
menced with our declaration of independence in 1776,
and not with the definite treaty of peace in 1783.
That by parity of reasoning, the independence of Bue-
nos Ayres commenced with their declaration of inde-
pendence, and as that declaration was matter of notorie-
ty throughout the world, and was more porticularly
proved by the correspondence between Don Onis and
Mr. Monroe, we were bound to consider them an inde-
pendent people.  That the seal of an independent peo-
ple proved itself, and was not the subject of proof by
any other sort of evidence.  That it was, in its nature
the highest species of evidence, because no nation could
delegate to subordinate agents a greater power or autho-
rity than it possessed itself.  That this principle was
fully recognized in the supreme court; and it was indeed
an offspring of the comity of nations, which all civilized
nations acknowledged.  That of course the seal attach-

RICHMOND
Dec. 1817.

United States
v
Hutchings.

ed to the commissions, in the present instance, proved itself—proved the genuineness and object of the commissions, and that it was incompetent to the prosecution to call for any other evidence as to these points. This argument, Mr. Upshur considered applied to both points made by the district attorney, but even if it did not, that there was nothing in the second point, because these commissions were executed and dated in Buenos Ayres, in blank, and were left to be filled up by the agent of that government in this country. That this was a satisfactory mode of accounting for the difference of time between the date of the commission and the adoption of the name of the *Santafecino*, and that there could be no reason to believe that the commissions had ever been used on board of any other vessel.

The court decided, that the commissions should go to the jury, merely as papers found on board the vessel. But on the main question, the court was of opinion, that a nation became independent from its declaration of independence, only as respects its own government, and the various departments thereof. That before it could be considered independent by the judiciary of foreign nations, it was necessary that its independence should be recognized by the executive authority of those nations. That as our executive had never recognized the independence of Buenos Ayres, it was not competent to the court to pronounce its independence. That, therefore, the court could not acknowledge the right of that country to have a national seal, and of course that the seals attached to the commissions in question, prove nothing.

Upon this state of the testimony, the case was argued before the jury. The cause occupied the whole of Thursday and Friday. In the course of the argument, Mr. Upshur made the point, whether by the act of con-

gress, under which the prisoner was indicted; a robbery
on the high seas amounted to piracy in any case. The
words of the act are, that "if any person shall, upon the
high seas, or in any haven, bay, or river, out of the juris-
diction of any particular state, commit murder, robbery,
or any other crime or misdemeanor, which, if committed
in the body of a country, would by the laws of the United
States be punished with death, it shall amount to piracy."
The argument of Mr. Upshur was, that it was necessary
that robbery should first be made punishable with death
by the laws of the United States, when committed on
land, before it could amount to piracy, when committed
on the sea, which was not now the case. That judge
Johnson had so decided in South Carolina, although a
contrary decision had been subsequently pronounced by
judge Washington.—That the conflict between these two
learned judges, proved that the law was at least doubtful
—that the jury in a capital case were judges, as well of the
law as the fact, and were bound to acquit, where either
was doubtful.

The court being appealed to for the interpretation of the
law, decided that it was not necessary that robbery should
be punishable by death when committed on land, in order
to amount to piracy if committed on the ocean; but as two
judges, (for both of whom the court entertained the highest
respect,) had pronounced opposite decisions upon it, the
court could not undertake to say that it was not at least
doubtful.

Mr. Murdaugh contended, that the acceptance of these
commissions amounted to an act of expatriation. Mr.
Wirt, on the other hand, insisted that it was not compe-
tent to any one to change his national character by his own
act alone, without the concurrent act of the government
he adopted.

*RICHMOND Dec. 1817.*

*United States v. Hutchings.*

RICHMOND
Dec. 1817.

United States
v,
Hutchings.

The court indicated an opinion against Mr. Murdaugh, founded chiefly upon the opinion already pronounced, that the government of Buenos Ayres could not be recognized by the court as existing at all.   The facts were commented on by all the counsel at considerable length.

The jury retired at candle-light on Friday evening, and in about ten minutes returned a verdict of *Not Guilty*.